**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Christopher A. Starks and Tina W. Starks, as the Personal Representatives for the Estate of Brittany Jasmine Oswell, | ) ) ) ) | Civil Action No. 3:18-cv-01062-MGL |
| Plaintiffs, | ) ) | **DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |
| vs. | ) ) ) | |
| American Airlines, Inc., | ) ) | |
| Defendant. | ) ) ) | |

Defendant American Airlines, Inc. ("American") moves for an order under Federal Rule of Civil Procedure 12(b)(2) dismissing this action for lack of personal jurisdiction or, in the alternative, transferring venue to the United States District Court for the Northern District of Texas, Fort Worth Division, pursuant to 28 U.S.C. § 1404(a).[1]  The Court lacks personal jurisdiction over American because:

- The Court does not have specific personal jurisdiction.  Plaintiffs' claims do not arise out of any allegedly tortious acts or omissions of American that occurred in South Carolina— in fact, the claims are not related to South Carolina at all—and American has only limited contacts in this state, none of which relate to this case.

- The Court does not have general personal jurisdiction.  Although American does business in South Carolina it is not "essentially at home" in South Carolina because it is not incorporated in or have its principal place of business in South Carolina and its business related to South Carolina is a relatively negligible component of its total operations.

---

[1] Pursuant to Local Civil Rule 7.04 (D.S.C.), American is not submitting a separate memorandum as all the grounds in support of its motion are set forth in the motion.

Therefore, for the reasons set forth more fully below, this action must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).[2]

## **FACTUAL BACKGROUND**

On April 14, 2016, Brittany Oswell and her husband, Cory Kadeem Oswell, boarded American Airlines Flight No. AA102 to travel from Honolulu, Hawaii, to Dallas Fort Worth International Airport ("DFW") in Texas. (*See* First Am. Compl. ¶ 7, ECF No. 13.) During flight, Ms. Oswell became ill. (*Id.* ¶¶ 8–26.) After landing at DFW, local emergency medical personnel treated Ms. Oswell and transported her to Baylor University Medical Center in Dallas. (*Id.* ¶¶ 21–22.) Ms. Oswell was subsequently admitted to Baylor University Medical Center's intensive care unit and received treatment from physicians there for a period of three days. (*Id.* ¶¶ 23–25.) Ms. Oswell died there on April 18, 2016. (*Id.* ¶ 26.)

Plaintiffs Christopher A. Starks and Tina W. Starks (Ms. Oswell's parents and the co-personal representatives of her estate) (hereinafter "the Starks") and Cory Oswell (her husband) filed a Complaint against American in this Court asserting wrongful death, survivorship, and loss of consortium causes of action. (Compl., ECF No. 1.) American moved to dismiss based on lack of subject-matter jurisdiction because Mr. Oswell and American are both citizens of Texas. (Am.'s Mot. to Dismiss Pls.' Compl., ECF No. 15.) Prior to the time for answering, Plaintiffs filed an Amended Complaint dropping Mr. Oswell and his claims from the lawsuit and curing the subject-

---

[2] 28 U.S.C. § 1631 provides that where a case is filed in a district—as here—where the court lacks personal jurisdiction over the defendant, the court need not dismiss but can transfer the matter to a district in which personal jurisdiction over the defendant does exist where justice so requires. The statute essentially transforms the Rule 12(b)(2) motion into a mandatory transfer rule as opposed to a voluntary transfer under the standards of 28 U.S.C. § 1404, which American raises as an alternative ground for transfer to the United States District Court for the Northern District of Texas.

matter jurisdiction defect. (*See generally* First Am. Compl.) American answered, asserting

defenses regarding personal jurisdiction and venue. (Answ., ¶¶ 41-43, ECF No. 23.)

## ARGUMENT

I.  **Plaintiffs' Allegations Fail to Satisfy the Requirements for Specific or General Personal Jurisdiction under the South Carolina Long-Arm Statute or the Due Process Clause of the Fourteenth Amendment as Interpreted by the United States Supreme Court. Therefore, Plaintiffs' Claims Must be Dismissed Pursuant to Rule 12(b)(2).**

Plaintiff has the burden to establish personal jurisdiction of the Court over the defendant.

*ESAB Grp., Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999) (citing *Combs v. Bakker*,

886 F. 2d 673, 676 (4th Cir. 1989)). As noted by the South Carolina Supreme Court:

> Personal jurisdiction is exercised as "general jurisdiction" or "specific jurisdiction." General jurisdiction is the State's right to exercise personal jurisdiction over a defendant even though the suit does not arise out of or relate to the defendant's contacts with the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985); general jurisdiction is determined under S.C. Code Ann. § 36-2-802 (2003). Specific jurisdiction is the State's right to exercise personal jurisdiction because the cause of action arises specifically from a defendant's contacts with the forum; specific jurisdiction is determined under S.C. Code Ann. § 36-2-802 (2003). *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 611 S.E.2d 505 (2005).

*Coggeshall v. Reproductive Endocrine Assocs. of Charlotte,* 376 S.C. 12, 16, 655 S.E.2d 476, 478

(2007).

In analyzing whether a plaintiff has established that the court has personal jurisdiction—

either specific or personal—over a defendant, "the court need not credit conclusory allegations or

draw farfetched inferences." *Gibson v. Confie Ins. Grp. Holdings, Inc.*, No. 2:16-cv-02872-DCN,

2017 WL 2936219, at *4 (D.S.C. July 10, 2017) (citing *Masselli & Lane, P.C. v. Miller & Schuh,

PA*, 215 F.3d 1320 (4th Cir. 2000)).

## A. Plaintiffs cannot establish specific personal jurisdiction over American.

Specific personal jurisdiction over out-of-state defendants in South Carolina is governed by the Long Arm Statute, S.C. Code Ann. § 36-2-803.  It provides:

(A)   A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

(1) transacting any business in this State;

(2) contracting to supply services or things in the State;

(3) commission of a tortious act in whole or in part in this State;

(4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(5) having an interest in, using, or possessing real property in this State;

(6) contracting to insure any person, property, or risk located within this State at the time of contracting;

(7) entry into a contract to be performed in whole or in part by either party in this State; or

(8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

*Id*.  To establish specific jurisdiction over a non-resident defendant, a plaintiff must satisfy two conditions: (1) South Carolina's long-arm statute must authorize the exercise of personal jurisdiction, and (2) the exercise of personal jurisdiction must comply with due process requirements.  *See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

**1. Plaintiffs' claims do not arise from any South Carolina contact of American.**

As discussed more fully below with regarding to general jurisdiction, American has business operations in South Carolina. None of those operations, however, relate to or give rise to the claims asserted by Plaintiffs. None of the eight categories of contact specified in S.C. Code Ann. § 36-2-803(A) necessary to trigger the Long Arm Statute exists. Without that nexus, this Court does not have specific jurisdiction over American in this case. Specific jurisdiction is appropriate only when the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). In other words, a defendant's forum-related activities must constitute the reason for the alleged injuries. Here, Plaintiffs' causes of action are wholly divorced from any action or contact of American in or with the State of South Carolina.

In *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), the Supreme Court clarified the narrow scope of specific personal jurisdiction, which is reflected in the statutory text of South Carolina's Long Arm Statute. The Court emphasized that "specific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780. Stated another way, "for a state to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* at 1780 (modifications and emphasis in original) (*citing Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

Here, the Amended Complaint contains no allegations of any South Carolina acts by American that resulted in the subject incident and/or Plaintiffs' claims. The inflight medical emergency that is the subject of this action occurred entirely on board an American flight flying from Hawaii to Texas. (Aff. of Debra Shaffer ¶ 12 (Ex. A).) South Carolina was neither the place of origin, nor the destination, for the subject flight. (*Id.*) The subject flight never flew over South Carolina. (*Id.*) None of American's policies with respect to inflight medical emergencies were developed in South Carolina. (*Id.* ¶ 13.) Therefore, as in *Bristol-Myers Squibb* and *Walden*, the allegations in the Amended Complaint do not arise out of or relate in any conceivable way to American's contacts with South Carolina. Consequently, the Court need not even reach the constitutional question of whether specific jurisdiction may be exercised over American consistent with the Fourteenth Amendment's Due Process Clause.

**2. Even if the required contacts existed, the Due Process Clause prohibits the exercise of specific jurisdiction.**

Assuming some South Carolina contact touching upon the accident existed, the Fourth Circuit applies a three-part test to determine compliance with due process: (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *See ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). Plaintiffs cannot satisfy this test.

**(a) American has not purposefully availed itself of the privilege of conducting activities in South Carolina to the extent required by the Supreme Court.**

Although American concedes that it conducts business activities in South Carolina, these activities, which are very small compared to its global operations, do not support the Court's exercise of specific personal jurisdiction. To meet the first prong of the Fourth Circuit test for

specific personal jurisdiction, a plaintiff must plead sufficient facts to establish that the defendant has the requisite "minimum contacts" in South Carolina by "purposefully availing itself of the privilege of conducting business under the state's laws." *Id.* at 392.

The Fourth Circuit has set forth a list of several non-exclusive factors in considering the first prong:

> (1) whether a defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant long-term business activities in the forum-state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur in the forum.

*Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

Here, as discussed at length below with regard to general jurisdiction, *infra*, pp. 11-14, American conducts business in South Carolina and thus, facially meets the first four factors, although not a single employee, piece of property, or business activity involved in South Carolina has any connection to or gave rise to any of the events or claims at issue in the case. Further, American's unrelated South Carolina activities pale in comparison to it activities in other states and in the context of its global operations. Further, the mere fact that American sells tickets to members of the public in South Carolina via its website and its telephone reservations system is insufficient to satisfy the first prong of the Fourth Circuit's test. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997).

The remaining factors all point to the unfairness of jurisdiction in South Carolina.  As asserted *infra*, p. 23, fn. 7, South Carolina law does not govern this dispute.  The trip to and from Hawaii was likely contracted from Texas.  Nothing related to the flight occurred in South Carolina.  In short, there is no fact pointing to South Carolina as a "fair" place to try this matter.

### (b) Plaintiffs' claims do not arise out of American's activities directed to South Carolina.

Even if American had purposefully availed itself of the privilege of conducting business in South Carolina to the degree required by the Supreme Court, which is denied, the Court should nevertheless dismiss Plaintiffs' claims because they do not arise out of any of American's activities directed to South Carolina.  The second prong of the test is essentially a reiteration of the requirement that the South Carolina contacts give rise to the claims asserted.  *See* S.C. Code Ann. § 38-2-803(b).  Stated another way, the second prong of the test for specific jurisdiction requires that "the defendant's contacts with the forum state form the basis of the suit."  *Consulting Eng'rs*, 561 F.3d at 278–79.  As the Supreme Court reiterated in *Goodyear*, a corporation's "continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."  564 U.S. at 927 (*quoting Int'l Shoe v. Washington*, 326 U.S. 310, 318 (1945)).

In its 2017 *Bristol-Myers Squibb* decision, the Supreme Court clarified the narrow scope of specific personal jurisdiction.  In that case, the Court emphasized that "specific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id*. at 1780.  Stated another way, "for a state to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'"  *Id*. at 1780 (modifications and emphasis in original) (*citing Daimler*, 571 U.S. at 127).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's

unconnected activities in the State." *Id*. at 1781; *see also Goodyear*, 564 U.S. at 931, n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

Applying those well-settled principles, the *Bristol-Myers Squibb* Court rejected the California Supreme Court's "sliding scale approach" in which extensive unrelated contacts with a jurisdiction were deemed sufficient to support specific jurisdiction even in the absence of related contacts. According to the Supreme Court, the "sliding scale" approach—in which "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim"—incorrectly relaxes the required connection between the forum and the specific claims at issue. *Id.* at 1781. The Court held that the sliding scale approach is a "loose and spurious form of general jurisdiction." *Id.*; *see also Walden*, 571 U.S. at 289–91 (holding that Nevada courts lacked specific jurisdiction over claims against an out-of-state defendant—even though the plaintiffs were Nevada residents and "suffered foreseeable harm in Nevada"—because the <u>relevant conduct</u> occurred entirely in Georgia, and thus, the mere fact that the tortious conduct affected plaintiffs with connections to the forum state did not suffice to authorize jurisdiction).

Here, the Amended Complaint contains no allegations of any South Carolina acts by American that resulted in the subject incident and/or Plaintiffs' claims. The inflight medical emergency that is the subject of this action occurred entirely on board an American flight flying from Hawaii to Texas. (Aff. of Debra Shaffer ¶ 12.) South Carolina was neither the place of origin, nor the destination, for the subject flight. (*Id.*) The subject flight never flew over South Carolina. (*Id.*) None of American's policies with respect to inflight medical emergencies were developed in South Carolina. (*Id.* ¶ 13.) As in *Bristol-Myers Squibb* and *Walden*, the allegations do not arise out of or relate in any conceivable way to American's contacts with South Carolina.

**(c) Conferring specific personal jurisdiction over American in this matter is not constitutionally reasonable.**

When, as here, plaintiffs fail to demonstrate the requisite minimum contacts with the forum state, and when their claims do not arise from the defendant's activity in or directed at the forum state, the court does not need to address the third factor of the due process test for personal jurisdiction. *See Informaxion Solutions, Inc. v. Vantus Grp.*, No. 2:15-cv-290-PMD, 2015 WL 7184562, at *2 (D.S.C. Nov. 10, 2015); *Sullivan v. Hawker Beechcraft Corp.*, 397 S.C. 143, 151, 723 S.E.2d 835, 839 (Ct. App. 2012).

Where it is necessary to reach the issue, courts consider a number of factors to ensure the appropriateness of the forum once it has been determined that a defendant has purposefully availed itself of the privilege of doing business in the state. *Consulting Eng'rs*, 561 F.3d at 279. Such factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.*; *see also Burger King*, 471 U.S. at 477. "The weaker the contacts . . . the less likely it is that jurisdiction is reasonable." *Grayson Consulting, Inc. v. Cathcart*, Nos. 2:07-cv-02992-DCN, 2:07-cv-00593-DCN, 2013 WL 5755400, at *3 (D.S.C. Oct. 23, 2013). Here, accident-related contacts with South Carolina are non-existent.

Consideration of these factors affirms that subjecting American to specific personal jurisdiction would be constitutionally unreasonable. As discussed in greater detail below with respect to general jurisdiction, American will face significant burdens in trying this case several states away from its home in Texas. (*See* Aff. of Debra Shaffer ¶ 21.) It will be forced to transport virtually all of its witnesses and documentary evidence to South Carolina for trial. (*See id.*)

Further, South Carolina also possesses relatively little interest in adjudicating this dispute, which has no spatial relationship to South Carolina, and at the time of the suit, Mr. and Mrs. Oswell resided in another state in connection with Mr. Oswell's military service. (First Am. Compl. ¶ 6.) For these reasons, it would be constitutionally unfair to hale American to court in South Carolina in this case.

**B. Plaintiffs Cannot Establish General Personal Jurisdiction Over American as American Is Not "Essentially at Home" in South Carolina.**

General, or "all-purpose," jurisdiction arises when a defendant's corporate operations within the forum state are of such an extensive nature as to justify a lawsuit on causes of action arising from dealings entirely distinct from those activities. *See Daimler*, 571 U.S. at 122. S.C. Code Ann. §36-2-802 governs general personal jurisdiction and provides that, "[a] court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in this State as to any cause of action." *Id.*

However, that standard is circumscribed by the Due Process Clause of the United States Constitution, and in turn, general jurisdiction has been limited significantly by recent United States Supreme Court precedent. Now, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137 (citing *Goodyear*, 564 U.S. at 924). Merely "doing business," as provided in the South Carolina statute's text, is insufficient to confer general jurisdiction.

The Supreme Court in *Daimler* revisited what "continuous and systematic" contacts with the forum state are required to render a defendant "at home" in the forum and explained that a corporation's place of incorporation and principal place of business are the paradigm bases for general jurisdiction. *Daimler*, 571 U.S. at 137–38. The Court clarified that a corporation is ***not***

subject to general jurisdiction in every state where it engaged in a substantial, continuous, and systematic course of business. *Id*. at 138 ("That formulation, we hold, is unacceptably grasping.").

Further, conducting business in a state—even substantial business—is insufficient to confer general personal jurisdiction. In *Daimler*, the plaintiffs sued a German company in California, arguing that personal jurisdiction was proper on the basis that the defendant's subsidiary's "systematic, continuous, and substantial" contacts could be imputed to the German parent company. The Supreme Court held that general jurisdiction did not exist, even assuming the subsidiary's contacts were extensive and could be imputed to the German company. Instead, a corporation may be subject to general personal jurisdiction ***only*** when its contacts are so "continuous and systematic," judged against its national and global activities, that it is "essentially at home" in the forum. *Id.* at 137–39.

The *Daimler* Court identified two locations where a corporation is "essentially at home": (1) where it is formally incorporated and (2) its principal place of business. *Id.* at 139. The Court made clear that only in an "exceptional case" would a corporation be "essentially at home" in a forum *other* than that of its domicile. *Id.* at 139, n.19.[3] Accordingly, the test for exercising general personal jurisdiction is whether the corporation is "at home" in the forum state such that it is subject to suit on any and all claims, even claims arising from activities outside of the forum state. *Id.* at 754; *see also Gracious Living Corp. v. Colucci & Gallaher, PC*, 216 F. Supp. 3d 662, 667

---

[3] In referencing an "exceptional case," the Supreme Court specifically referenced *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 448 (1952), in which the defendant, Benguet, was incorporated under the laws of the Philippines, where it operated gold and silver mines. During World War II when Japanese occupied the Philippines, Benguet's president moved to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities, which had been suspended in the Philippines. The Court held that Ohio courts could exercise general personal jurisdiction over Benguet without offending due process because "Ohio was the corporation's principal, if temporary, place of business." *Id.*

(D.S.C. 2016) ("A corporation may be subject to general jurisdiction in the forum where it "is fairly regarded as at home.").

*Daimler* was recently reaffirmed by the Supreme Court in *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017). Reversing the Montana Supreme Court's expansive view of general jurisdiction, the *BNSF Railway* Court held that "[t]he Fourteenth Amendment due process constraint described in *Daimler* . . . applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or the business enterprise sued." *Id*. at 1558–59. The Court reiterated that the paradigm bases for exercising general jurisdiction over a corporate defendant in a state where that corporation is "at home" are its place of incorporation and location of its principal place of business. *Id*. at 1558. Even though the railway defendant had over 2,000 miles of railroad track and more than 2,000 employees in Montana, general jurisdiction does not focus solely on the magnitude of a defendant's in-state contacts, and " '[a] corporation that operates in many places can scarcely be deemed at home in all of them.' " *Id.* at 1559 (quoting *Daimler*, 571 U.S. at 139).

In this case, neither American's place of incorporation nor its principal place of business are in South Carolina. (Aff. of Debra Shaffer ¶¶ 4, 5.) Nor is this an exceptional case, given American's limited contacts with South Carolina relative to its overall operations in the United States and the world. American is incorporated in the State of Delaware and has its principal place of business in Texas. (*Id.*) Of American's 1,676,503 flights system-wide in 2017 (the latest year in which information is available), just 1.01% (or 16,911 flights) originated in or flew to South Carolina. (*Id.* ¶ 6.) American served over 136,987,057 passengers system-wide in 2017. (*Id.* ¶ 7.) However, a mere 1.83% of these passengers originated in or flew to South Carolina. (*Id.*) Just 0.79% of American's 2017 revenue was derived from South Carolina operations. (*Id.* ¶ 8.)

American does not maintain any cockpit or cabin crew bases in South Carolina. (*Id.* at ¶ 11.) American leases relatively limited property at the airports it serves in South Carolina, and it does not lease, own, or otherwise maintain any other premises in South Carolina and has no other training facilities or offices in the state. (*Id.* ¶ 9.) American does not maintain any bank accounts in South Carolina. (*Id.* ¶ 10.)

Therefore, as judged against its national and global activities, American is in no way "at home" in South Carolina. Furthermore, neither its principal place of business nor its state of incorporation are situated in South Carolina. Under the standard recently rearticulated by the United States Supreme Court in *Daimler* and *BNSF*, American is neither "at home" nor "essentially at home" in South Carolina, and no exception applies. Accordingly, South Carolina federal courts may not assert general personal jurisdiction over American in this case.

## II. To the Extent the Court Has Personal Jurisdiction Over American, American Alternatively Asks That the Court Transfer the Matter to the United States District Court for the Northern District of Texas.

American asks that if this Court finds that it has personal jurisdiction over American, this action should nonetheless be transferred to the United States District Court for the Northern District of Texas for the reasons set forth below.

Transfer to the Northern District of Texas is appropriate because:

- The Texas court has personal jurisdiction over American in this matter.

- Transfer significantly eases access to sources of proof and material testimony because the majority of American's witnesses with material, first-hand testimony either live in and/or work in or out of the Dallas-Fort Worth area; the EMS and medical personnel who transported and treated Ms. Oswell are likely to live or work in the area; American's inflight emergency policies and other documentary evidence are located there; the subject airplane is based at DFW; and Ms. Oswell's widower, who was with her during the flight, resides in Texas.

- Material witnesses are outside the subpoena power of South Carolina courts, but are within the subpoena power of the Texas court.

- Transfer will dramatically decrease the costs of obtaining attendance of witnesses because of the witnesses' proximity to Texas.

- The Texas court is less congested and has a stronger interest in this case because Texas substantive law applies to the claims and because of American's significant presence in the Dallas metropolitan area, the citizens of that area likely have a greater interest in seeing American's liability adjudicated in a local court.

As set forth above, the Court lacks personal jurisdiction over American. The case should be dismissed and transferred pursuant to 28 U.S.C. § 1631. However, to the extent the Court concludes that personal jurisdiction exists in South Carolina, the Court should exercise its power to transfer the case pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all the parties have consented.

Section 1404(a) "was intended to enlarge the common law power of the Court under the ancient doctrine of *forum non conveniens*" and permits courts to "grant transfers upon a lesser showing of inconvenience than that required at common law." *DeLay & Daniels, Inc. v. Allen M. Campbell Gen. Contractors, Inc.*, 71 F.R.D. 368, 370 (D.S.C. 1976) (citations omitted); *Del Zotto v. Universal Physician Servs., LLC*, 2014 F. Supp. 3d 499, 501 (D.S.C. 2016).

When evaluating a motion to transfer venue, a court must make two determinations: whether the plaintiffs could have brought their action in the proposed transferee district, *see id.* at 502; *DeLay & Daniels*, 71 F.R.D. at 371, and (2) whether transferring the action to the proposed transferee district promotes convenience and the interests of justice. *See generally DeLay & Daniels*, 71 F.R.D. at 371.

**A.      Plaintiffs' action could have been brought in the Northern District of Texas.**

To determine whether Plaintiffs could have filed their case in the proposed transferee district, the district must have (1) subject-matter jurisdiction over the claim, (2) personal jurisdiction over the defendant, and (3) provide a proper venue.  *See id*.  All three requirements are met in this case.

First, the Northern District of Texas has diversity subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Complete diversity of citizenship exists between the parties because Plaintiffs are South Carolina residents and citizens. (First Am. Compl. ¶ 1).  American is a citizen of the State of Texas, where its corporate headquarters is located, and Delaware, where it is incorporated.  (Aff. of Debra Shaffer ¶¶ 4, 5.)  The amount in controversy exceeds $75,000.00, exclusive of interest and costs under 28 U.S.C. § 1332.  (First Am. Compl. ¶ 4.)

Second, the United States District Court for the Northern District of Texas court has personal jurisdiction over American.  Its corporate headquarters is located within the boundaries of the district and particularly within the district's Fort Worth division.  (Aff. of Debra Shaffer ¶ 5.)

Finally, venue is proper in that court because a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b).  Here, American is the sole Defendant; it resides in the State of Texas; and its headquarters are located in Fort Worth, which is in Tarrant County.  (Aff. of Debra Shaffer ¶ 5.)  Tarrant County is in the Fort Worth Division of the Northern District of Texas.  28 U.S.C. § 124(a)(2).  Thus, the Fort Worth Division of the Northern District of Texas is a proper venue for this action.

**B.      Transfer Serves the Convenience of the Parties and Witnesses and Is in the Interests of Justice.**

The second prong of the test is satisfied as well.  The Supreme Court has enumerated six factors to consider when making this determination, including (a) the relative ease of access to sources of proof; (b) the availability of compulsory process for attendance of unwilling witnesses; (c) the cost of obtaining attendance of willing witnesses; (d) factors of public interest, including the relative congestion of court dockets and a preference for holding a trial in the community most affected; (e) practical problems that make trial of the case easy, expeditious, and inexpensive; and, (f) the plaintiffs' choice of forum.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

**(1) Transfer significantly eases access to sources of proof.**

Transfer of venue is appropriate when "a majority of the witnesses and the scene of the incident are located in another venue."  *Bennett v. CSX Transp. Inc.*, No. 4:10-cv-01417-RBH, 2010 WL 4646248, at *4 (D.S.C. Nov. 8, 2010) (transferring an action from the District of South Carolina to the Eastern District of North Carolina because, *inter alia*, the events giving rise to the action occurred in North Carolina and a majority of the witnesses and treating physicians resided there); *see also Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 79–80 (4th Cir. 1967) (holding that trial court's denial of transfer to the Southern District of West Virginia from the Western District of Virginia constituted abuse of discretion because the injury occurred in West Virginia and all of the witnesses lived in West Virginia); *S. Ry. Co. v. Madden*, 235 F.2d 198, 200–01 (4th Cir. 1956) (finding that a trial court abused its discretion by failing to transfer an action in which the site of the plaintiff's injury, the location of all witnesses, and the plaintiff's initial treating physicians were located in the proposed transferee court, and the only persons to be inconvenienced by the transfer were plaintiff's counsel, a photographer who took pictures of the accident scene, and a physician who provided post-injury treatment).

Here, the allegedly negligent acts of American occurred onboard one of its aircraft during flight, which subsequently landed at DFW. (Aff. of Debra Shaffer at ¶ 22.) Ms. Oswell was treated by EMS personnel in Fort Worth, was transported to a Dallas hospital and treated there for three days, and died in Dallas. (First Am. Compl. at ¶¶ 21–26.) South Carolina, on the other hand, has no physical relationship to the site of any actions that form the bases of Plaintiffs' claims against American.

A great majority of the primary witnesses reside and/or work in the Northern District of Texas. "The Fourth Circuit has consistently held that a transfer of venue pursuant to § 1404 is appropriate when a majority of the witnesses and the scene of the incident are located in another venue, and when a majority of the people involved in the case would be better served by changing the venue." *Bennett*, 2010 WL 4646248, at *4. For instance:

- Cory Oswell, Ms. Oswell's widower, is a resident of Austin, Texas. (Compl. ¶ 2.) He is likely to be a primary witness for Plaintiffs, as he observed firsthand the incidents giving rise to this action. (*See generally* First Am. Compl. ¶¶ 8–26.)

- Nine of the ten American employees onboard the subject flight—including the captain, first officer, relief first officer, and six of the seven members of the cabin crew—are still employed by American.[4] (Aff. of Debra Shaffer ¶ 14.)

- The captain, first officer, and relief first officer are based at DFW and reside in the Dallas/Fort Worth metropolitan area. (*Id.* ¶ 15.) Three of the seven flight attendants reside in the Dallas/Fort Worth metropolitan area, and a fourth flight attendant resides in Austin, Texas. (*Id.* ¶ 16.) These flight attendants are also based at DFW. (*Id.*)

- American's flight dispatcher, who was in communication with the cockpit crew, and American's customer service manager, who met the flight upon its arrival at DFW, are current employees of American and reside in the Dallas/Fort Worth metropolitan area. (*Id.* ¶¶ 18, 19.)

---

[4] Unfortunately, the seventh member of the cabin crew is now deceased. (*Id.*)

- EMS personnel who treated Ms. Oswell at DFW and transported her to a local hospital, as well as the physicians who treated her at the hospital, are all likely to be residents of the Dallas/Fort Worth metropolitan area.

Additional witnesses in this case may not reside in the Dallas/Fort Worth metropolitan area, but will nevertheless benefit from the transfer of this action because of easier travel to and from the Dallas/Fort Worth metropolitan area as compared to Columbia. For example, another flight attendant on board the subject flight lives in Bothell, Washington and is based in Los Angeles, but nevertheless travels through DFW. (*Id.* ¶ 17.) For this individual, Dallas/Fort Worth is closer and more convenient than South Carolina. The final flight attendant lives in Missouri and is based in Chicago, but also travels to and from DFW for work. (*See id.* at ¶ 17.) Again, it will be easier and more convenient for this witness to travel to Texas than to South Carolina.

Importantly, the "materiality, nature and quality" of the likely testimony of the witnesses is taken into consideration, and it is significant if a proposed transferee court is more convenient to witnesses who will provide essential testimony. *See Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009). Mr. and Mrs. Starks, the personal representatives of Ms. Oswell's estate, reside in South Carolina. However, respectfully, their testimony will be of less importance to the disputed factual issues regarding what occurred during flight. They were not onboard the subject flight and did not observe firsthand any of the events giving rise to this action. The testimony of eyewitnesses to the event is more important to the liability issues than any testimony that Mr. and Mrs. Starks may provide, thereby supporting transfer of this action to the Fort Worth Division of the Northern District of Texas.

Finally, in addition to witnesses, the document-based proof in this case, as well as American's headquarters, are also situated in the Fort Worth Division of Northern District of Texas. The location of relevant documentary evidence and a defendant's headquarters are of

paramount importance in analyzing the ease of access to sources of proof. *See Sw. Equip., Inc. v. Stoner & Co.*, No. 6:10-1765-HMH, 2010 WL 4484012, *2 (D.S.C. Nov. 1, 2010); *see also Del Zotto*, 214 F. Supp. 2d at 505 (finding that "the documentation [defendants] need for the trial of this case is located in" the proposed transferee district, and this "fortifies Defendants' argument to transfer the case"). American's policies with respect to inflight medical emergencies, personnel files, data, and other key documents are all located at American's headquarters in Fort Worth, Tarrant County, Texas.[5] (Aff. of Debra Shaffer ¶ 5.) Accordingly, the ease of access to proof in this case supports transfer of this matter to the Fort Worth Division of the Northern District of Texas.[6]

> **(2) Many key witnesses are outside of the District of South Carolina's subpoena power, but within the subpoena power of the Northern District of Texas.**

Another factor supporting transfer of this matter to the Northern District of Texas is its ability to subpoena key witnesses. Courts reason:

> The possibility that a case may be tried where certain crucial witnesses could not be compelled to attend is an important consideration. Requiring a party to try his case with depositions because the place of trial is such as to prevent the party from

---

[5] Consideration of the physical location of documents is still relevant to an analysis under Section 1404(a) despite the "advent of modern technology, including photocopying, scanning, and electronic document production." *Brown v. Sullivan*, No. 6:14-cv-4376-GRA, 2015 WL 12815281, at *2 (D.S.C. Mar. 3, 2015) (finding that the physical presence of documents in the Southern District of Georgia supported transfer of an action to that District from the District of South Carolina).

[6] Courts also consider the location of any premises to be viewed when determining whether transfer of venue is appropriate. *Gulf Oil Corp.*, 330 U.S. at 508. While American does not, at this early stage in litigation, know whether a request will be made to inspect the subject aircraft, it notes that the subject aircraft, No. AA102, is an American 767-323 (Registration N398AN), which does not fly any regularly scheduled flights to or from airports in South Carolina. It regularly flies to and from DFW and is primarily based at DFW; Miami International in Miami, Florida; and John F. Kennedy in New York City, New York. (Aff. of Debra Shaffer ¶ 20.) Therefore, to extent that this factor is applicable, it favors transfer of this action to the Fort Worth Division of the Northern District of Texas.

> compelling attendance of material witnesses is unacceptable when the case could be transferred to a district where attendance could be compelled and which would be convenient in other respects for both parties. Consistent with this principle courts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court.

*Comm. Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F. Supp. 247, 250 (S.D.N.Y. 1974). Many of the non-party witnesses, including Ms. Oswell's treating physicians, the EMS personnel who cared for Ms. Oswell at DFW, and other passengers on the aircraft who observed the incident giving rise to this action, are likely outside the subpoena power of the District of South Carolina but within the subpoena power of the Northern District of Texas. *See* Fed. R. Civ. P. 45(c)(1). This factor supports transfer of this action.

### (3) Trying this case in the Northern District of Texas will dramatically decrease the costs of obtaining attendance of witnesses.

The costs of transporting Mr. Oswell, all nine American employees onboard the subject flight, the customer service manager who met the subject flight upon its arrival at DFW, the dispatcher who communicated with the subject flight, the numerous EMS personnel and doctors who treated Ms. Oswell, any American employees who developed the airline's policies with respect to inflight medical emergencies, and any other Texas-based witnesses who may be called to South Carolina for a multi-day trial will be significant. This cost far exceeds the costs associated with transporting Mr. and Mrs. Starks to Texas for trial. This factor further supports transfer of this case to the Fort Worth Division of the Northern District of Texas. *See Brown*, 2015 WL 12815281, at *3 (holding that "for the same reasons the court found that a transfer is more convenient to the parties and witnesses, the cost of obtaining attendance of the witnesses would likewise favor a transfer").

**(4) The Northern District of Texas is less congested than the District of South Carolina and has a stronger interest in this case.**

Several factors of public interest also support transferring this matter to the Northern District of Texas.  First, courts frequently compare the relative congestion of the proposed transferee court to the congestion in the forum court and will transfer the case if doing so will help to relieve overall congestion in the federal court system.  *See, e.g.*, *Gulf Oil Corp.*, 330 U.S. at 508.  Here, the Northern District of Texas is far less congested than the District of South Carolina.  According to the latest statistics in the Administrative Office of the United States Courts' "National Judicial Caseload Profile," the median time in months from filing to disposition of civil cases in the District of South Carolina is 17.0 months.  *See Dec. 31, 2017 Nat'l Judicial Caseload Profile*, Admin. Office of the U.S. Courts, http://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2017.pdf.   The District of South Carolina ranks 88th out of the 94 federal district courts in terms of median time from filing to disposition of civil cases.  *Id.*  The District of South Carolina is also eighth out of the nine districts in the Fourth Circuit.  *Id.*

In comparison, the Northern District of Texas is one of the least-congested and fastest-acting district courts in the country.  *Id.*  With a median time from filing to disposition of civil cases of just 6.8 months, the Northern District of Texas ranks fourteenth out of all federal district courts, and first out of the nine districts in the Fifth Circuit.  Transferring the case to the Northern District of Texas will result in a quicker disposition for all parties and will provide relief to the District of South Carolina (including its judges, court staff, and all litigants with presently-pending cases) by removing an action from its docket.  This factor favors transfer to the Northern District of Texas.

Second, the Fort Worth Division of the Northern District of Texas has a much stronger interest in hearing this case than the District of South Carolina. Although Plaintiffs' Amended Complaint asserts causes of action under South Carolina law, Texas substantive law applies in this matter.[7] Courts frequently base transfer decisions on the "appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case." *DeLay & Daniels*, 71 F.R.D. at 373. Such a scenario is preferable to "having a court in some other forum untangle problems in conflict of laws, and in laws foreign to itself." *Id.* Because it is preferable that a federal court sitting in Texas (as opposed to a federal court sitting in South Carolina) apply Texas substantive law, transfer to the Fort Worth Division of the Northern District of Texas is proper.

---

[7] In this Motion, American is not setting forth its full argument regarding choice of laws in this matter. In summary, however, federal courts sitting in diversity apply the choice-of-law rules applicable in the state in which it sits. *In re Section 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 421 (D.S.C. 2010). Accordingly, this Court should apply South Carolina choice-of-law rules. South Carolina follows the *lex loci delicti* principle in tort cases, meaning that "the law of the place where the injury was occasioned or inflicted governs in respect to the right of action." *Dawkins v. State*, 306 S.C. 391, 392–93, 412 S.E.2d 407, 408 (1991). Here, the parties may disagree with respect to *where* any alleged injury to Ms. Oswell was "occasioned or inflicted." Courts facing similar circumstances, however, apply the law of the state where the last event necessary to make the defendant potentially liable occurred. *See, e.g., Ferguson v. Trans World Airlines, Inc.*, 135 F. Supp. 2d 1304, 1308–09 (N.D. Ga. 2004). In *Ferguson*, an individual flying from Seattle to St. Louis experienced difficulty breathing throughout the flight and died after the plane landed in St. Louis. *Id.* at 1306–07. The court opined that several states could, potentially, be the locus of the airline's allegedly negligent act, including the states where the pilot opted not to divert; the states where the airline allegedly breached its duty of care; and the states where the airline formulated policies with respect to onboard medical equipment. *Id.* at 1308. The court noted, too, that because the aircraft was flying, the "exact situs of the injury . . . is basically impossible to determine." *Id.* The court employed Georgia's *lex loci delicti* choice of law rules (the same as South Carolina's rules) and applied Missouri law because it was the site of the "last event necessary" to make the defendant potentially liable. *Id.* Under this analysis, Texas substantive law should apply.

**(5) Plaintiffs' choice of forum is to be afforded little weight.**

Although a plaintiff's choice of forum was formerly afforded significant weight, this is no longer the case. Indeed, plaintiffs "do[] not have an absolute right to choice of forum," and "[t]he significance of the factor of plaintiff's choice has been considerably diminished under Section 1404(a)." *DeLay & Daniels*, 71 F.R.D. at 371; *see also Odom v. Nw. Mut. Life Ins. Co.*, No. 2:13-cv-00407-PMD, 2013 WL 1401608, at *3 (D.S.C. Apr. 8, 2013). This factor is significantly less important when, as here, the "plaintiff sues in a forum which has no discernible connection with the controversy." *Brown*, 2015 WL 12815281, at *2 (citing *DeLay & Daniels*, 71 F.R.D. at 371).

Although Plaintiffs reside in South Carolina, "litigation should take place in the federal judicial district or division with the closest relationship to the *operative events*." *Id.* at *4. Here, no relevant "events" occurred in South Carolina, further supporting transfer of the case to the Fort Worth Division of the Northern District of Texas. *See Odom*, 2013 WL 1404608, at *3 (finding transfer appropriate where, *inter alia*, "the Complaint does not allege that any acts or omissions occurred" in plaintiff's choice of forum).

## AFFIRMATION OF CONSULTATION PRIOR TO FILING MOTION

Counsel for American certifies, pursuant to Local Civil Rule 7.02, that he has consulted with opposing counsel in a good faith attempt to resolve the issues set forth in this Motion, but has been unable to resolve by agreement the issues raised herein.

## CONCLUSION

Because this Court does not have general or specific personal jurisdiction over American in this case, the Amended Complaint must be dismissed and the matter transferred to the Northern District of Texas. If the Court does not dismiss the case based on lack of personal jurisdiction,

however, this action should be transferred under 28 U.S.C. § 1404(a) from the District of South Carolina to the Fort Worth Division of the Northern District of Texas.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/TIMOTHY M. MCKISSOCK
     Timothy M. McKissock
     Federal Bar No. 6257
     E-mail: tim.mckissock@nelsonmullins.com
     Erin R. Stuckey
     Federal Bar No. 9868
     E-Mail: erin.stuckey@nelsonmullins.com
     1320 Main Street / 17th Floor
     Post Office Box 11070 (29211-1070)
     Columbia, SC  29201
     (803) 799-2000

     *Attorneys for Defendant American Airlines, Inc.*

Columbia, South Carolina

August 14, 2018

## CERTIFICATE OF SERVICE

I, the undersigned counsel for Defendant American Airlines, Inc., do hereby certify that the foregoing was filed electronically on August 14, 2018, and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of filing, which constitutes service of same pursuant to Federal Rule of Civil Procedure 5(b)(3) and Local Civil Rule 5.05. The following parties were served via ECF:

Bradford W. Cranshaw
Grier, Cox & Cranshaw, LLC
2999 Sunset Boulevard, Suite 200
West Columbia, SC 29169

Matthew M. McGuire
The Ervin & McGuire Law Firm
1824 Bull Street
Columbia, SC 29201

*Attorneys for Plaintiffs Christopher A. Starks and*
*Tina W. Starks, as the Personal Representatives*
*for the Estate of Brittany Jasmine Oswell*

s/TIMOTHY M. MCKISSOCK
Timothy M. McKissock
